UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| PEARL RECORDS, INC., HORSE OF TROY PRODUCTIONS INC., AND MELCHER MEDIA, INC.<br><br>Plaintiffs,<br><br>v.<br><br>CRAIG CONNER,<br><br>Defendant. | )<br>)<br>)<br>)<br>) NO. 3:22-cv-00096<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## MEMORANDUM OPINION

This matter is before the Court on Craig Conner's Motion to Dismiss under Rules 12(b)(1) & (2) of the Federal Rules of Civil Procedure, or in the alternative, Motion to Transfer Venue. (Doc. No. 19). For the reasons set forth below, Conner's Motion to Dismiss will be is granted.

### I.  BACKGROUND

This action for declaratory judgment concerns a photograph featuring country music artist Garth Brooks. (Doc. No. 1, ¶1). The photograph at-issue is depicted in *Garth Brooks The Anthology Part I, The First Five Years* ("*The Anthology*"), a 240-page memoir of Brooks' personal stories and photographs from the first five years of his career, (Doc. No. 1, ¶1),[1] and is also depicted in an *Anthology* promotional video or DVD prepared by Horse of Troy Productions. (Doc. Nos. 1, ¶16; 19, at 2). Pearl Records claims that it owns the photograph of Brooks and that it provided the photograph to Melcher Media, along with other images, artwork, sheet music, lyrics, and the like, for Melcher Media to design and produce *The Anthology*. (Doc. No. 1, ¶¶9, 24). Pearl

---

[1] *The Anthology* was published on November 14, 2017, and registered with the U.S. Copyright Office on January 25, 2018. (Doc. No. 1, ¶1).

1

keeps the physical 4x6 photograph of Brooks in its archive vault in Nashville, Tennessee, and asserts that a deceased family member of Brooks took the photograph. (Doc. No. 1, ¶¶1, 19).

Conversely, Conner claims that he is the author and sole owner of all copyright interest in the photograph. (Doc. No. 19, at 1). He states that he captured the photograph in San Antonio, Texas in 1991, and that it is his protected work by and through his copyright registration, entitled "G.B. San Antonio 1991." (Doc. No. 19-1).[2] Consequently, on November 30, 2021, Conner's counsel sent a letter to Melcher Media, Horse of Troy, and Pearl, (together "the Companies") insisting that if they could not produce a license from Conner to use his photograph, then their "direct, substantial, and continuing unauthorized use of [Conner's] copyright-protected work" must cease immediately. (Doc. No. 19-4).

The letter specifically demanded (1) the termination of all further dissemination of Conner's work, (2) an audited accounting of revenue from sales of *The Anthology*, (3) the lockdown and protection of all electronically stored information per an attached "Notice Concerning Retention of Potentially Relevant Documents", (4) the destruction of every tangible advertisement bearing the image, (5) the buy-back or withdrawal of any item containing the photograph, i.e. all copies of *The Anthology*, (6) the return of all remaining copies of the photograph in their possession, (7) a sworn itemization of all uses of the work, and (8) for the Companies to immediately inform their commercial general liability insurance carriers of Conner's claim. (Doc. No. 19-4). The letter also contained a spoliation of evidence notice demanding that the Companies not destroy any print or digital evidence. (Doc. No. 19-4).

---

[2] Conner received a copyright registration certificate for G.B. San Antonio 1991 on July 19, 2021, under registration number VAu 1-439-105. (Doc. Nos. 1, ¶¶17-18; 19-4).

2

On January 18, 2022, Conner's counsel sent a follow-up email to the Companies with the salutation "Dear Infringers", stating that he had not received a response to his November letter. (Doc. No. 19-2). The email declared that if the Companies' representative, attorney, or insurance adjuster failed to get in contact within two weeks, the Companies may expect a suit to be filed without further notice. (Doc. No. 19-2). In response, the Companies filed this case for declaratory judgment, seeking a declaration that Pearl is the rightful owner of the photograph, and that the Companies have not infringed on Conner's copyright because he is not the author. (Doc. Nos. 1, ¶24; 19-3). See 28 U.S.C. § 2201.

In Conner's motion to dismiss, he alleges that no justiciable controversy exists and therefore this Court cannot issue a declaratory judgment. (Doc. No. 19, at 4). Conner also alleges that he does not have sufficient contacts with Tennessee, because he has not directed any actions towards the State. Consequently, he asserts that the Court does not possess personal jurisdiction over him. (Doc. No. 19, at 10). Alternatively, he prays that the action be transferred to the Eastern District of Texas. (Doc. No. 19). The Companies contest each point. (Doc. No. 20). The Court agrees with Conner's second point that it does not have personal jurisdiction over him. To paraphrase one famed country musician, the Court finds that all the nexus is in Texas, that's why the Companies can't hang their hat in Tennessee. See All My Ex's Live in Texas – George Strait (1987).

## II. DISCUSSION

Subject-Matter Jurisdiction

This case arises under the Declaratory Judgment Act, which grants the Court discretionary authority to declare the rights, obligations and other legal relations of an interested party in cases of actual controversy within its "*jurisdiction*." 28 U.S.C. § 2201(a). See Cardinal Health, Inc. v.

3

Nat'l Union Fire Ins. Co. of Pittsburgh, PA, 29 F.4th 792, 796 (6th Cir. 2022) ("The Supreme Court has 'repeatedly characterized the Declaratory Judgment Act as an enabling Act, which confers a discretion on the courts rather than an absolute right upon the litigant.'") (quoting Wilton v. Seven Falls Co., 515 U.S. 277, 287, 115 S.Ct. 2137, 132 L.Ed.2d 214 (1995) (internal quotation marks omitted)). Conner's motion to dismiss pursuant to Rule 12(b)(1) challenges this Court's subject matter jurisdiction to consider this declaratory action.

Rule 12(b)(1) motions generally come in one of two forms: a facial attack or a factual attack. Howard v. City of Detroit, Michigan, 40 F.4th 417, 422 (6th Cir. 2022) (quoting Gentek Bldg. Prods., Inc. v. Sherwin-Williams Co., 491 F.3d 320, 330 (6th Cir. 2007)). "A motion to dismiss in a declaratory judgment action is considered a factual attack on subject matter jurisdiction." Beach Sales & Eng'g, LLC v. Telebrands, Corp., 2015 WL 1930337, at *1 (N.D. Ohio 2015) (quoting Google, Inc. v. EMSAT Advanced Geo–Location Tech., LLC, 2010 WL 55685, at *2 (N.D. Ohio 2010) (citing 3D Sys. v. Envisiontec, Inc., 575 F.Supp.2d 799, 804 (E.D. Mich. 2008)); see Foundations Worldwide, Inc. v. Oliver & Tate Enterprises, Inc., 2013 WL 4054636, at *2 (N.D. Ohio 2013). With a factual attack, no presumptive truthfulness applies to the allegations in the complaint and the district court has wide discretion to review evidence outside of the complaint to satisfy itself that it possesses jurisdiction. Howard, 40 F.4th at 422.

The Declaratory Judgment Act does not confer federal subject-matter jurisdiction on the Court itself. Heydon v. MediaOne of Se. Michigan, Inc., 327 F.3d 466, 470 (6th Cir. 2003). Rather, the complaint must state an independent basis for subject-matter jurisdiction. Id. See Toledo v. Jackson, 485 F.3d 836, 839 (6th Cir. 2007) ("Before invoking the Act… a federal court must have jurisdiction already under some other federal statute.") (internal quotations omitted). "Federal question jurisdiction 'exists in a declaratory judgment action if the plaintiff has alleged facts in a

well-pleaded complaint which demonstrate that the defendant *could file* a coercive action arising under federal law.'" Severe Recs., LLC v. Rich, 658 F.3d 571, 581 (6th Cir. 2011) (emphasis kept) (quoting Stuart Weitzman, LLC v. Microcomputer Res., Inc., 542 F.3d 859, 862 (11th Cir. 2008), abrogation on other grounds recognized by Fastcase, Inc. v. Lawriter, LLC, 907 F.3d 1335, 1341 (11th Cir. 2018)). This Court has federal question jurisdiction over "all civil actions arising under the Constitution, law, or treaties of the United States." 28 U.S.C. § 1331. Because the Companies allege sufficient facts in their Complaint that Conner could file an action under the Copyright Act, the Court has subject matter jurisdiction. (Doc. No. 1, ¶24); see 28 U.S.C. § 1338(a) ("The district courts shall have original jurisdiction of any civil action arising under any Act of Congress relating to… copyrights…."); Severe Recs., LLC, 658 F.3d at 581 ("[A] question of authorship… arise[s] under the Copyright Act[.]"); Jones v. Glad Music Publ'g & Recording LP, 535 F. Supp. 3d 723, 732 (M.D. Tenn. 2021) ("[C]laims premised upon authorship of a copyrighted work arise under the Act. … In addition, ownership claims grounded in disputes about authorship are considered to arise under the Act.") (emphasis omitted).

Once subject-matter jurisdiction is satisfied, the Court then determines whether the declaratory judgment claim is justiciable, meaning there must be a case of actual controversy. Google, Inc., 2010 WL 55685, at *2 (internal quotations omitted). However, the Court need not make this determination, nor "deci[de] whether to exercise or decline jurisdiction," under the Declaratory Judgment Act, if the Court does not have personal jurisdiction over Conner. J.M. Smucker Co. v. Promotion in Motion, Inc., 420 F. Supp. 3d 646, 662 (N.D. Ohio 2019) (the court considered the "threshold issue of personal jurisdiction" before analyzing the "five… Grand Trunk factors[] to determine whether the exercise of Declaratory Judgment Act jurisdiction [would be] appropriate") (internal quotations omitted). See also Bird v. Parsons, 289 F.3d 865, 872 (6th Cir.

5

2002) ("'[N]o unyielding jurisdictional hierarchy' exists between subject matter and personal jurisdiction.") (quoting Ruhrgas AG, 526 U.S. at 578). Cardinal Health, Inc., 29 F.4th at 796.

Personal Jurisdiction

Personal jurisdiction restrains judicial power to protect individual liberty. Ruhrgas AG v. Marathon Oil Co., 526 U.S. 574, 584, 119 S. Ct. 1563, 1570, 143 L. Ed. 2d 760 (1999). It is "'an essential element of the jurisdiction of a district … court,' without which the court is 'powerless to proceed to an adjudication.'" Id. (quoting Employers Reinsurance Corp. v. Bryant, 299 U.S. 374, 382, 57 S.Ct. 273, 81 L.Ed. 289 (1937)). Whether a Court has personal jurisdiction over a party is a question of law paramount to the Due Process Clause. Bridgeport Music, Inc. v. Still N The Water Pub., 327 F.3d 472, 477 (6th Cir. 2003).

When challenged, "[t]he plaintiff bears the burden of establishing the existence of personal jurisdiction." AlixPartners, LLP v. Brewington, 836 F.3d 543, 548 (6th Cir. 2016) (citing Serras v. First Tenn. Bank Nat'l Ass'n, 875 F.2d 1212, 1214 (6th Cir. 1989)). Where, as here, a district court solely relies on "written submissions and affidavits to resolve a Rule 12(b)(2) motion, rather than resolving the motion after either an evidentiary hearing or limited discovery, the burden on the plaintiff is 'relatively slight,' and 'the plaintiff must make only a prima facie showing that personal jurisdiction exists in order to defeat dismissal[.]'" Air Prod. & Controls, Inc. v. Safetech Int'l, Inc., 503 F.3d 544, 549 (6th Cir. 2007) (quoting Am. Greetings Corp. v. Cohn, 839 F.2d 1164, 1169 (6th Cir. 1988) and Theunissen v. Matthews, 935 F.2d 1454, 1458 (6th Cir. 1991) (internal citation omitted)). A plaintiff meets this burden by setting forth "specific facts showing that the court has jurisdiction." Brewington, 836 F.3d at 549 (quoting Serras, 875 F.2d at 1214). The Court must view the pleadings and affidavits in the light most favorable to the plaintiff. Air Prod. & Controls, Inc., 503 F.3d at 549.

6

This Courts subject-matter jurisdiction is satisfied if the Complaint presents a federal question and if the Court possess personal jurisdiction over Conner. Bridgeport Music, Inc., 327 F.3d at 477; (quoting Bird v. Parsons, 289 F.3d 865, 871 (6th Cir. 2002) (internal quotation marks omitted)). Indeed, the Complaint presents a federal question under the Copyright Act. However, personal jurisdiction over Conner exists if he is (1) amenable to service of process under the forum state's long-arm statute and (2) if the exercise of personal jurisdiction would not deny him due process. Id. (quoting Bird, 289 F.3d at 871) (quotation marks omitted). Where a state's long-arm statute extends to the limits of the Due Process Clause, the two inquiries merge, and the court need only determine whether exercising personal jurisdiction violates Conner's due process rights. Id.

The Due Process Clause requires that Conner have sufficient minimum contacts with Tennessee so that the Court's exercise of personal jurisdiction over him does not offend traditional notions of fair play and substantial justice. Conn v. Zakharov, 667 F.3d 705, 712 (6th Cir. 2012); see Int'l Shoe Co. v. Washington, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945)). There are two paths to personal jurisdiction within the minimum contacts due process inquiry: "(1) general personal jurisdiction, where the suit does not arise from defendant's contacts with the forum state; and (2) specific jurisdiction, where the suit does arise from the defendant's contacts with the forum state." Conn, 667 F.3d at 712–13. Conner cannot be said to have had "continuous and systematic contact" with Tennessee, such that general jurisdiction would be appropriate. Id. at 714 (citing Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414–16 & n. 9, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984)). The Companies have not argued this point, nor plead "specific facts showing that the court has [general] jurisdiction." Brewington, 836 F.3d at 549. (See Doc. No. 20, at 14). Therefore, the Court will focus on the Companies' argument that the Court has specific jurisdiction over Conner.

Specific Jurisdiction

For a court to have specific jurisdiction, a plaintiff must plead specific facts sufficient to satisfy the three-part test established in Southern Mach. Co. v. Mohasco Industries, Inc.:

> First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

401 F.2d 374, 381 (6th Cir. 1968).

**Purposeful Availment**

The first part of the Mohasco test relates to purposeful availment, which "is something akin to a deliberate undertaking to do or cause an act or thing to be done in [Tennessee] or conduct which can be properly regarded as a prime generating cause of the effects resulting in [Tennessee], something more than a passive availment of [Tennessee's] opportunities." Bridgeport Music, Inc., 327 F.3d at 478. The focal point of the Court's purposeful availment inquiry is whether Conner has engaged in some overt actions that connects him with Tennessee. Id. The Companies allege that Conner has had two forms of contact that connect him with Tennessee: "(1) the original, physical 4x6 photograph at-issue located in Pearl Records' possession in Nashville, Tennessee,[3]

---

[3] The Companies state for the first time in their response: "[I]f, in fact, Defendant is the author and owner of the photograph at issue, how did the original, physical 4x6 photograph come into Pearl Records' possession? The answer is simple: Defendant delivered the photograph at issue to Pearl Records in Nashville, Tennessee." (Doc. No. 20, at 11). However, a "conclusory allegation without evidentiary support… does not provide specific fact[s] showing that the court has jurisdiction over [the] Defendant…." Parker v. Winwood, 2017 WL 6886076, at *7 (M.D. Tenn. 2017), aff'd, 938 F.3d 833 (6th Cir. 2019). See Ficarelli v. Champion Petfoods USA, Inc., 2018 WL 6832075, at *7 (M.D. Tenn. 2018) (same). See also Livnat v. Palestinian Auth., 851 F.3d 45, 57 (D.C. Cir. 2017) ("Conclusory statements" and "bare allegation[s]" do not establish a prima facie showing of jurisdiction sufficient to survive a 12(b)(2) motion to dismiss. "When deciding personal jurisdiction without an evidentiary hearing—as here—the court must resolve factual disputes in favor of the plaintiff, but it need not accept inferences drawn by plaintiffs if such inferences are

8

and (2) that [Conner] made numerous demands for copyright infringement and even threatened to enforce his copyright to [the Companies'] offices located in Nashville, Tennessee." (Doc. Nos. 1, at 2; 20, at 10-11). The "numerous demands" for infringement directed at Tennessee boil down to four contacts, specifically: (1) the copyright infringement demand letter of November 31, 2021, sent by Conner's counsel, (2) the telephone calls between the Companies' and Conner's counsel on December 3, 2021, (3) the January 18, 2022 email notifying the Companies that failure to contact Conner's counsel would result in the filing of suit without further notice, and (4) an email sent on February 3, 2022, requesting accounting documents to fashion a demand. (Doc. Nos. 19-2; 19-4; 20, at 11 & 13; 20-1, ¶¶7 & 11). In evaluating these contacts, the Court's inquiry is ultimately guided by the "*quality* rather than the quantity of the contacts." Calphalon Corp. v. Rowlette, 228 F.3d 718, 722 (6th Cir. 2000) (emphasis kept).

The Court finds that the December 3, 2021 telephone call cannot be characterized as an overt act directed towards Tennessee. Russell Jones, Jr., counsel for Pearl and Horse of Troy, states in his affidavit that he is the one that called Conner's counsel. (Doc. No. 20-1, ¶7). Similarly, the quality of Conner's contact through the February 3, 2022 email is weakened, as Conner's counsel sent this email in response to earlier emails sent by Jones. (Doc. No. 20-1, ¶11). Regarding the quality of the remaining two cease and desist letters, the Sixth Circuit has "recognized that the threat of litigation can be a factor supporting purposeful availment." Id. at 723. However, as a

---

unsupported by the facts") (internal citation and quotations omitted). Over and above the conclusory nature of this assertion, the Companies actually indicate that they lack the factual predicate to support it later in their response. (Doc. No. 20, at 14) ("Additionally, Defendant (purportedly) sent the photograph at issue to Nashville, Tennessee….") (parenthetical theirs). See Bridgeport Music, Inc. v. TufAmerica, Inc., 2019 WL 3310866, at *4 (E.D. Mich. 2019) ("[C]onclusory jurisdictional allegations made on 'information and belief' generally are insufficient to establish personal jurisdiction.") (quoting Sheikh v. York, 2012 WL 1004853, at *2 (E.D. Mich. 2012)).

9

general rule "cease-and-desist letters alone do not suffice to create personal jurisdiction…." Red Wing Shoe Co. v. Hockerson-Halberstadt, Inc., 148 F.3d 1355, 1360 (Fed. Cir. 1998);[4] see also Int'l Watchman, Inc. v. 81 Jan., Inc., 2017 WL 3783711, at *3 (N.D. Ohio 2017) ("Courts have repeatedly held that cease and desist letters are insufficient to establish purposeful availment.") (collecting cases). This is partly due to the strong policy aim of encouraging cease and desist letters to facilitate dispute resolution without resorting to litigation. See Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme, 433 F.3d 1199, 1208 (9th Cir. 2006) (en banc). Put another way, "[i]f the price of sending a cease and desist letter is that the sender thereby subjects itself to jurisdiction in the forum of the alleged rights infringer, the rights holder will be strongly encouraged to file suit in its home forum without attempting first to resolve the dispute informally by means of a letter." Id. This would be contrary to the policy favoring the "settlement of infringement claims" in the most efficient manner. Red Wing Shoe Co., 148 F.3d at 1361.

---

[4] See Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme, 433 F.3d 1199, 1208 (9th Cir. 2006) (en banc) ("A cease and desist letter is not in and of itself sufficient to establish personal jurisdiction over the sender of the letter."); C5 Med. Werks, LLC v. CeramTec GMBH, 937 F.3d 1319, 1324 (10th Cir. 2019) ("[W]e agree with the Federal Circuit that a single cease-and-desist letter is insufficient to confer jurisdiction in a declaratory judgment action like this one. … Because C5 has failed to allege sufficient activities in addition to the cease-and-desist letter, we conclude the district court's exercise of personal jurisdiction over CeramTec was improper."); Defense Distributed v. Grewal, 971 F.3d 485, 489 (5th Cir. 2020) ("[T]his court's decision in Stroman … held that sending a cease-and-desist letter into Texas was, by itself, insufficient to exercise personal jurisdiction over an out-of-state defendant."); Nova Biomedical Corp. v. Moller, 629 F.2d 190, 197 (1st Cir. 1980) ("[T]he mailing of an infringement notice standing alone has rarely been deemed sufficient to satisfy the constitutional standard [of due process]."); Worldwide Interactive Network, Inc. v. Chmura Econ. & Analytics, L.L.C., 2010 WL 3489394, at *9 (E.D. Tenn. 2010) ("[T]he Court recognizes that threats of infringement directed at the forum state are not enough in itself to satisfy the 'minimal contacts' requirement."); Gerrit's Brand, Inc. v. Sun Valley Raisins, Inc., 2022 WL 532940, at *3 (E.D. Mich. 2022) ("A cease and desist letter alone informing a party in the forum state of infringement is not enough to create personal jurisdiction under the fairness prong. There must be other activities related to the cause of action, with the focus being on the relationship among the defendant, the forum, and the litigation.") (internal citations and quotations omitted).

However, "[t]his is not to say that a cease and desist letter can never be the basis for personal jurisdiction." Yahoo! Inc., 433 F.3d at 1208; see Apple Inc., 30 F.4th at 1378 ("[W]e have repeatedly rejected the notion that the sending of a notice letter 'can never provide specific jurisdiction.'") (quoting Jack Henry & Assocs., Inc. v. Plano Encryption Techs. LLC, 910 F.3d 1199, 1203 (Fed. Cir. 2018)); Defense Distributed v. Grewal, 971 F.3d 485, 496 n.10 (5th Cir. 2020) (the "specific language used" in a cease-and-desist letter "coupled with other actions", in addition to injuries to the plaintiff that "are directly attributable to the… letter", subjected the sender to personal jurisdiction); HealthSpot, Inc. v. Computerized Screening, Inc., 66 F. Supp. 3d 962, 969 (N.D. Ohio 2014) ("[A]ctions that go beyond merely sending cease and desist letters and offers to license can support personal jurisdiction."). The question this Court must answer is, did Conner do 'something more' in addition to his notices of infringement, so that he may properly be haled into this Court? The Court concludes that he did not.

The "purposeful availment requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts…." Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475, 105 S. Ct. 2174, 2183, 85 L. Ed. 2d 528 (1985) (internal quotations omitted). However, Conner's actions are the exact "random," "fortuitous," and "attenuated" contacts that do not serve as the basis for personal jurisdiction. Conner "e-mailed the letter[s] to [Tennessee (and New York)] only because [the Companies] happened to do business there." Int'l Watchman, Inc., 2017 WL 3783711, at *3. See Calphalon Corp., 228 F.3d at 723 (phone, mail, and fax contact, as well as physical visits, occurred solely because company chose to be headquartered in state, not because Rowlette sought to further its business and create consequences there). The letters are not something more, or "other activities," Avocent Huntsville Corp. v. Aten Int'l Co., 552 F.3d at 1333, by themselves sufficient to establish personal jurisdiction.

11

Additionally, the physical location of the photograph in Nashville is of no strife here. See generally Dowling v. United States, 473 U.S. 207, 217, 105 S. Ct. 3127, 3133, 87 L. Ed. 2d 152 (1985) ("The [alleged] infringer… does not assume physical control over the copyright."). In fact, copyright law recognizes a distinction between a physical embodiment of a work and a copyright protected work, with the subject-matter of copyright encompassing only the latter. Montgomery v. Jones, 355 F. Supp. 3d 720, 726 (M.D. Tenn. 2019). See 17 U.S.C. § 202 ("Ownership of a copyright, or of any of the exclusive rights under a copyright, is distinct from ownership of any material object in which the work is embodied. Transfer of ownership of any material object, including the copy or phonorecord in which the work is first fixed, does not of itself convey any rights in the copyrighted work embodied in the object; nor, in the absence of an agreement, does transfer of ownership of a copyright or of any exclusive rights under a copyright convey property rights in any material object."). Conner did not claim conversion as to the physical photograph, but rather he claims authorship and ownership over, and infringement upon, the underlying intangible copyright. Unlike the physical photograph, the intangible copyright itself cannot be physically tethered to Nashville any more than it can to any other place. Cf. Rosen v. Terapeak, Inc., 2015 WL 12724071, at *9 (C.D. Cal. 2015) ("[T]he Court finds direction from other cases that have rejected the notion that the mere location of a server may give rise to personal jurisdiction.") (collecting cases).[5] Therefore, the photograph's physical location, discrete from the underlying copyright, has no bearing on this Court's jurisdiction over Conner. Because the Court

---

[5] In fact, "[t]he general rule is that intangible personal property is 'located' in its owner's domicile." GP Credit Co., LLC v. Orlando Residence, Ltd., 349 F.3d 976, 979 (7th Cir. 2003). See Yellow Pages Photos, Inc. v. Ziplocal, LP, 2012 WL 2952452, at *5 (M.D. Fla. 2012) ("The situs of the injury in copyright infringement for purposes of personal jurisdiction, has generally been held to be the state where the copyright owner resides.") (collecting cases). See also King Recs., Inc. v. Bennett, 438 F. Supp. 2d 812, 837 (M.D. Tenn. 2006) ("A certificate of registration constitutes prima facie evidence of the ownership and validity of the copyright….").

12

Case 3:22-cv-00096 Document 33 Filed 01/20/23 Page 12 of 14 PageID #: 191

finds that Conner's contacts with Tennessee are insufficient to satisfy the purposeful availment requirement, which is the sine qua non of personal jurisdiction, Mohasco Indus., Inc., 401 F.2d at 381-82, the Court need not examine the remaining requirements to conclude that it lacks personal jurisdiction over Conner.

Transfer

Having determined that it lacks personal jurisdiction over Conner, the Court must either dismiss this action without prejudice, or, in the interest of justice, transfer it to a court that has personal jurisdiction over Conner pursuant to 28 U.S.C. §§ 1406(a) or 1631. Cosmichrome, Inc. v. Spectra Chrome, LLC, 504 F. App'x 468, 472 (6th Cir. 2012). The language of § 1406(a) is amply broad enough to authorize the transfer of this case, despite the Court not possessing personal jurisdiction over Conner. Goldlawr, Inc. v. Heiman, 369 U.S. 463, 466, 82 S. Ct. 913, 916, 8 L. Ed. 2d 39 (1962). Conner requests that the Court transfer this suit to the Eastern District of Texas, Beaumont Division, as he resides in that district. (Doc. No. 19, at 12). Under 28 U.S.C. §1400(a), a suit arising under federal copyright law "may be instituted in the district in which the defendant or his agent resides or may be found." See Bridgeport Music, Inc. v. TufAmerica, Inc., 2019 WL 3310866, at *11 (E.D. Mich. 2019). Therefore, in the interest of justice, efficiency, and comity, the Court will exercise its discretion and transfer the case to the district in which Conner resides, the Beaumont Division of the Eastern District of Texas. Bunting ex rel. Gray v. Gray, 2 F. App'x 443, 448 (6th Cir. 2001).

The Companies tailor all of their arguments resisting the transfer of this dispute to the Court's authority to order transfers under 28 U.S.C. § 1404(a), however, the Court authorizes this transfer under § 1406 in order to cure the lack of jurisdiction in this district.

13

## CONCLUSION

For the reasons stated above, Conner's Motion to Dismiss is granted, and this suit is transferred to the U.S. District Court for the Eastern District of Texas, Beaumont Division for further proceedings.

An appropriate order will enter.

_____
WAVERLY D. CRENSHAW, JR.
CHIEF UNITED STATES DISTRICT JUDGE